IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH CALDWELL,

    **Plaintiff,**

vs.                                                                        1:20-cv-3

UNIVERSITY OF NEW MEXICO BOARD OF REGENTS,
NASHA TORREZ, and
LOBO DEVELOPMENT CORPORATION,

    **Defendants.**

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Joseph Caldwell, by and through his attorneys, Kennedy, Hernandez & Associates, P.C. and Justine Fox-Young, P.C. brings this complaint requesting injunctive relief, making procedural and substantive due process claims under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, and making claims pursuant to New Mexico law.

### INTRODUCTION

This case arises out of the University of New Mexico's unlawful action banning Joseph Caldwell from the University campus, evicting him from his residence, disallowing him from playing basketball for the University and banning him from registering for courses for the 2020 spring semester. The University, the Dean of Students and other agents of the University have imposed these restrictions based on unsubstantiated allegations that Mr. Caldwell has engaged in criminal behavior. Mr. Caldwell has not been arrested or charged, much less proven guilty in a court of law, nor has the University followed its own processes to determine whether he has violated its Code of Conduct. Mr. Caldwell has not been afforded a hearing in which to hear and challenge evidence and witnesses against him nor has he had the opportunity to appeal. The

University's actions are plainly contrary to the United States Constitution, as Mr. Caldwell has protected interests in his residence, his education, his ability to play basketball and his ability to further his career.

## JURISDICTION AND VENUE

1. This action arises under 42 U.S.C § 1983 and the Fourteenth Amendment to the United States Constitution, of which this Court has jurisdiction under 28 U.S.C §§ 1331 and 28 U.S.C. §1343(3).

2. Venue is proper under 28 U.S.C § 1391(b) because the facts giving rise to this complaint occurred, and the Defendants reside, in this district.

3. This Court is authorized to issue the Injunctive Relief requested by Plaintiff under Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES

4. Plaintiff Joseph Caldwell has been, at all times material to this complaint, a student attending the Defendant University of New Mexico. He currently resides in Albuquerque, New Mexico.

5. Defendant UNM Board of Regents ("UNM" or "The University") is authorized under and pursuant to the laws of New Mexico, with the authority to sue and be sued.

6. Defendant Lobo Development Corporation ("LDC") is a UNM Regent-owned non-profit corporation organized for charitable and educational purposes which manages and rents out the properties at Lobo Village, where Plaintiff resides. The University of New Mexico is the sole member of the LDC, and the property of the LDC is managed by a nine-member Board of Regents, including the President of Defendant UNM. The corporation exists to serve Defendant UNM, and its net revenues are all absorbed by Defendant UNM.

7. Defendant Nasha Torrez is, and was at all times relevant herein, the Dean of Students at

the University.

8. All defendants were, at all times relevant herein, operating within the course and scope of their respective authority and under color of state law.

## FACTUAL BACKGROUND

### *Plaintiff's Interim Suspension by Defendant UNM*

9. Plaintiff Joseph Caldwell enrolled as a student and began his studies at the University of New Mexico in January, 2019.

10. In January, 2019, he also began residing on campus at the Lobo Village development.

11. Plaintiff signed to play as a point guard with the University of New Mexico Men's Basketball program in April, 2019.

12. On or about December 16, 2019, the Albuquerque Police Department took a report of allegations of battery against Plaintiff.

13. Plaintiff's accuser is not a UNM student, and, upon information and belief, not even a resident of New Mexico.

14. On or about December 19, 2019, Plaintiff received an email from Defendant UNM's Dean of Students' Office banning him from the University campus and informing him that he would not be able to reach anyone at the Dean of Students' Office from December 21 through January 1st, as the University would be closed.

15. The email stated that allegations recently made against Plaintiff were being considered and were "under the jurisdiction of the Office of Equal Opportunity."

16. The email further stated as follows:
    - That Plaintiff was "hereby interim banned from all of UNM Campus, except for UNM Hospitals and Clinics for the purpose of seeking medical care and except for [his] in-person courses for Spring 2020 semester."

- That Plaintiff is banned from Lobo Village, where he resides, and all on-campus housing facilities.

- That, except for attendance at a class for which he is registered which is scheduled to take place at Johnson Gym, Plaintiff is banned from Johnson Gym and any other portion of campus without express written consent of the Dean of Students Office.

- That, other than the single course Plaintiff had previously registered for, he was only permitted to register for and/or pursue online courses going forward.

- That Plaintiff would face criminal charges for trespass for failure to comply with the campus ban and/or Code of Conduct charges that could lead to expulsion.

17. Also on or about December 19, 2019, Plaintiff received an eviction notice from Defendant Lobo Development Corporation stating that he was required to clear out all his possessions within three days or face eviction proceedings.

18. The notice stated that Plaintiff was "[b]anned from the University of New Mexico, Residence Life and Student Housing, and American Campus Communities" and that he was being evicted because he had violated his lease agreement due to his "unlawful action causing serious physical harm to another person."

19. The notice was signed by Jessika Griego, area manager for Lobo Village.

20. In a public release, UNM representatives subsequently stated that Plaintiff was "being withheld from competition and team activity" indefinitely" or "until further notice." *See* https://www.abqjournal.com/1403561/lobo-starters-carlton-bragg-j-j-caldwell-suspended.html

21. During a brief conference with staff at the Office of Equal Opportunity on or about December 20, 2019, Plaintiff denied the charges against him.

22. Defendant Nasha Torrez subsequently had a brief meeting with Plaintiff during which she reiterated that he was suspended and that she would make the decision whether or not to continue his indefinite suspension at some unknown later date.

23. Defendant Torrez informed Plaintiff that the campus ban would remain in place with no opportunity for redress or appeal over the holiday break, which continues until January 2, 2020.

24. Since his suspension began, Plaintiff has already missed two basketball games, several practices and is barred from all on-campus activities, including exercising at the gymnasium, visiting the library, walking across campus and otherwise engaging in the activities of a student.

25. On or about December 23, 2019, agents or employees of Defendant LDC went to Plaintiff's apartment to roust him out because he had not left in response to Defendant LDC's initial notice.

26. Defendant LDC took this action despite the fact that Plaintiff had asked to remain at his residence and had been told that he would not be evicted until after January 3, 2020.

27. On December 30, 2019, Plaintiff received an email from Greg Golden, Assistant Dean of Students, informing him that if he wanted to discuss UNM's campus ban, he would have to reach out to Kelly Davis, the UNM Student Conduct Officer in the Office of the Dean of Students who promulgated the "ban letter."

28. Golden further notified Plaintiff that Ms. Davis would not actually be reachable for some time as she would not be checking her email over the holiday break.

29. The spring semester begins January 21, 2020, and unless the suspension is lifted, Plaintiff will be unable to attend in person classes other than the one course he registered for in advance of the school's ban.

30. The suspension, should it continue, will altogether prevent Plaintiff from completing his coursework and from practicing and playing basketball at the University, will cause him to lose his athletic scholarship, will likely destroy any prospects of playing professional basketball in the future, and will severely further damage his reputation.

31. To date, Plaintiff has not had the benefit of any of the following:

    • A written complaint from any office of the University detailing the allegations against him;

    • Any evidence or discovery whatsoever regarding the allegations against him;

    • Any information as to the identities and statements of adverse witnesses; and

    • Any opportunity to challenge the allegations at a hearing with confrontation rights.

32. Defendant UNM's Office of Equal Opportunity ("OEO") has not provided Plaintiff with a written notice of allegations against him, has not concluded an investigation, has not completed or circulated a draft report, has not provided Plaintiff with an opportunity to comment on any report and has not finalized a report with respect to the allegations against Plaintiff.

33. According to Defendant UNM's own procedures, all of the actions detailed in paragraph 30 must take place before any findings are submitted to the Dean of Students. *See* https://oeo.unm.edu/forms/pdf/flowchart_dept.pdf.

34. Plaintiff is unable to appeal any findings to the President of the University unless and until OEO completes a final report. *See id.*

35. No office or division of Defendant UNM has made any findings whatsoever that Plaintiff has violated the school's code of conduct or acted contrary to New Mexico law.

36. Plaintiff has had no opportunity to appeal any such findings, as there are none to appeal.

37. Plaintiff has suffered and continues to suffer significant damages as a result of his suspension, including harm to his professional image, reputation and career prospects.

*The Department of Justice Investigation & Oversight of Defendant UNM*

38. In 2016, as a result of numerous complaints to the United States Department of Justice ("DOJ") about UNM's Title IX process, DOJ initiated a 16-month investigation into allegations that the University was not properly handling complaints made pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), as amended, 20 U.S.C. §§ 1681- 1688, and its implementing regulations, 28 C.F.R. pt. 54.

39. DOJ issued a letter of findings against Defendant UNM on April 22, 2016, detailing improper policies and procedures, inadequate training and otherwise finding that Defendant UNM had failed to promptly and equitably resolve student and employee complaints pursuant to Title IX.

40. The specter of the DOJ investigation adversely impacted Defendant UNM's image and standing in the community.

41. In October 2016, DOJ and Defendant UNM reached an agreement spelling out specific measures the University would adopt in order to treat Title IX complaints, and DOJ oversaw the implementation of the agreement for three years.

42. On information and belief, Defendant UNM has altered its policies, procedures and approach to complaints made pursuant to Title IX as a result of the DOJ oversight and the public scrutiny surrounding the DOJ investigation.

43. During the course of the three-year oversight, United States Department of Education Secretary Betsy Devos announced that the agency will adopt new regulations on Title IX, including provisions requiring universities to provide students with live hearings and to allow cross-examination of those alleging sexual harassment or assault.

44. The proposed regulations further make it clear that, if a school favors one party over another, it will be exposed to a finding of discrimination on the basis of sex.

45. These regulations are expected to be finalized early in 2020.

46. Meanwhile, the DOJ formally ended its oversight of Defendant UNM in a letter dated Dec. 6, 2019.

47. Now that Defendant UNM is no longer subject to formal DOJ oversight, it now acts with total impunity and in violation of federal law.

48. For years, Defendant UNM has systematically denied accused students access to complaints, evidence, the identities of witnesses, the investigative reports, live hearings and confrontation rights in violation of the Fourteenth Amendment.

49. Now, Defendant UNM has gone a step further in suspending accused students, including Plaintiff, before making any findings against them whatsoever.

### *Defendant UNM's Disciplinary Process*

50. Defendant UNM has adopted and promulgated a *Code of Student Conduct* (*CSC*), an *Administrative Policies and Procedures Manual (APP)* and a *Student Grievance Procedure ("SGP")*.

51. The CSC states that "Students' rights under the state and federal constitutions are specifically acknowledged and affirmed, including the rights of freedom of speech, freedom of association, freedom of religion, and due process. The provisions of this Code of Conduct shall be construed so as not to infringe upon these rights, as those rights are defined by law."

52. The CSC further provides that "'Suspension' means losing student status for a period of time specified in the terms of the suspension" and notes that suspension occurs "upon a finding of a violation."

53. Defendant UNM's procedures specify that "A report of sexual violence or misconduct will be taken seriously and addressed in accordance with UNM policies and procedures."

54. Defendant UNM's APP further specifies that the "[Office of Equal Opportunity] ("OEO") has the responsibility for implementing the University's affirmative action policy" and that "OEO shall receive inquiries regarding issues involving civil rights issues; counsel claimants; evaluate claims; receive and process formal claims; prepare written investigative reports which contain findings of fact; and conciliate meritorious claims separately or jointly with the parties."

55. The policies also state that "[d]uring OEO's investigation following a report of sexual misconduct, and prior to a final determination being made, the reporting party ("complainant") and responding party ("respondent") have equal rights to be treated with respect, dignity, and sensitivity throughout the process; to information on how the University will protect their confidentiality; and to present evidence or other information they feel relevant to the matter. Once OEO's investigation is complete and a final determination is made, the complainant and respondent have the equal right to notice of those findings and equal access to appeal those findings . . . . ."

56. Defendant UNM's procedures do not provide for or require that an accused student receive written notice of a complaint against him/her, any discovery, identity of witnesses, a live hearing or the opportunity to cross-examine witnesses.

57. According to Defendant UNM's policies, an accused student may seek "a discretionary review of OEO's determination through the Office of the President . . . and/or the Board of Regents."

58. Further, "[s]hould the Dean of Students Office take action based on the investigation's findings, both parties will have equal rights to appeal the action . . .[,] will have equal access

to the information upon which the findings are based, have an equal opportunity to present evidence and witnesses (subject to the limitations in the statement of complainant's rights []), and will receive equal notification of the results of the procedure. Both parties also will have the equal right to appeal the results of the grievance of the Dean of Students Office's decision . . . ."

59. The limited rights afforded by Defendant UNM's procedures, as detailed in paragraphs 50 to 58, fall far short of what is required under the federal constitution but nonetheless provide a process that the University is to follow in treating Title IX complaints.

60. Under a separate section of the APP, however, Defendant UNM insists that the University may impose "*interim measures*" on accused students, which "may include, but are not necessarily limited to, the following []: (1) directives [] that the parties have no contact with each other; (2) that one or more parties be moved to another office or location, be placed on paid administrative leave, or removed from a class; or (3) have a registration hold placed on a student account." (emphasis added)

61. The APP further provides that the Dean of Students Office has the authority to implement interim measures for students and that these measures "stay in place until the end of any review or appeal process."

62. Under this policy, the Dean of Students may suspend a student indefinitely, throughout the course of an investigation, determination and appeal, without making any findings of wrongdoing and without providing any of the above-described process.

63. It is this provision, permitting an "interim suspension" that all Defendants apparently rely on in banning Plaintiff from campus, evicting him from his residence, suspending him from the basketball team, and preventing him from registering for in-person classes.

64. Defendant UNM's procedures do not explicitly provide that the Dean may ban a student

from campus, evict him from his residence and prevent him from registering for and attending in person classes, the APP does describe lesser measures that may be taken.

65. Specifically, the APP notes that "[t]he Dean of Students Office can impose a 'no contact' order, which typically directs the complainant and respondent not to have contact with each other, either in-person or through electronic communication, pending the investigation and resolution of a complaint. The Dean of Students Office can arrange for changes in academic and/or on-campus living situations as needed. Other interim measures, as appropriate, can be implemented by the Dean of Students Office before the final outcome of the investigation and afterwards as needed."

66. With respect to Plaintiff, Defendants chose not to impose lesser restrictions in the manner of a no contact order or a limitation on communications, but rather imposed an outright ban preventing him from remaining on campus or in his home, under threat of criminal action.

67. Plaintiff has received no written explanation from the Defendant Torrez detailing her bases for imposing this ban, and he has no recourse or opportunity to appeal the decision.

## CLAIMS FOR RELIEF

### COUNT I – DUE PROCESS VIOLATIONS
(All Defendants)

68. Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 67.

69. Pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiff enjoys a property interest in his status as a student at the University, in the education he has undertaken to receive, and as a player on the University basketball team, as well as a liberty interest in his reputation and future professional career.

70. Defendants, under color of law within the meaning of 42 U.S.C. § 1983, deprived Plaintiff

of rights and privileges secured by the United States Constitution and are liable for his injuries.

71. The deprivations of law, rights and privileges were a natural consequence of Defendants' actions, irrespective of whether such consequences was intended.

72. Defendants violated Plaintiff's clearly established rights secured by the Fourteenth Amendment, including but not limited to the right to procedural and substantive due process, by suspending Plaintiff, banning him from campus and evicting him from his residence, without making any findings whatsoever of wrongdoing on his part and without providing him with a formal complaint or charging document, evidence against him, a live hearing, or an opportunity to cross-examine witnesses against him.

73. Defendants acted contrary to the Fourteenth Amendment in failing to afford Plaintiff any due process protections whatsoever before suspending him.  The suspension of a state university student implicates a protected due process property interest, and allegations of physical violence impugn the student's reputation and integrity, thus implicating a protected due process liberty interest. *See, e.g.*, *Doe v. University of Cincinnati*; 872 F.3d 393 (6th Cir. 2017) (upholding the district court's granting of a preliminary injunction in campus sex abuse case where the plaintiff was not granted a hearing and opportunity to cross-examine his accuser).

74. A student's opportunity to share his version of events must occur at "some kind of hearing," *Goss v. Lopez*, 419 U.S. 565, 579 (1975) .

75. Defendants afforded Plaintiff no due process whatsoever and denied him "notice and opportunity for hearing *appropriate to the nature of the case*," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (emphasis added), and "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and *in a*

*meaningful manner,*" *Mathews*, 424 U.S. at 333 (internal quotation marks omitted; emphasis added).

76. Defendants' directives absolutely banned Plaintiff from campus, thereby denying him property interests and liberty interests that are subject to constitutional protection. *See Goss*, 419 U.S. 565 (recognizing a student's entitlement to a public education as a property interest in the educational process which is constitutionally protected); *Albach v. Odle*; 531 F.2d 983, 985 (10th Cir. 1976) ("The educational process is a broad and comprehensive concept with a variable and indefinite meaning. It is not limited to classroom attendance but includes innumerable separate components, such as participation in athletic activity and membership in school clubs and social groups, which combine to provide an atmosphere of intellectual and moral advancement.")

77. Defendants acted with reckless disregard for Plaintiff's clearly established rights.

78. As a direct and proximate result of these acts and omissions Plaintiff has suffered and continues to suffer the harms and damages as described above.

## COUNT II - BREACH OF CONTRACT

(Defendants UNM & LDC)

79. Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 78.

80. Plaintiff has agreed to enroll as a student and play basketball for Defendant UNM, and in return, Defendant UNM has contracted to provide Plaintiff with access to its undergraduate degree programs.

81. The relationship between the parties is contractual in nature, and each party to the contract owes to the other certain duties, some of which are enumerated in Defendant UNM's policies and procedures and the Student Handbook.

82. The University has breached its obligations to Plaintiff under this contractual arrangement and Plaintiff has been, and continues to be, damaged by this breach.

83. In addition, the University has failed to honor its obligation of good faith and fair dealing imputed in each contract entered into in New Mexico.

84. Plaintiff and Defendant LDC entered into a lease agreement governing the rights and responsibilities of the parties.

85. Defendant LDC has failed to honor its obligation of good faith and fair dealing imputed in each contract entered into in New Mexico.

86. As a direct and proximate result of these acts and omissions Plaintiff has suffered and continues to suffer the harms and damages as described above.

WHEREFORE, Plaintiff respectfully requests that this Court order the following relief:

A. Reverse the University of New Mexico's interim suspension of Plaintiff;

B. Enjoin Defendants from taking any steps to suspend Plaintiff without due process;

C. Enjoin Defendants from evicting Plaintiff in contravention of New Mexico law;

D. Retain jurisdiction of this matter for the purpose of ensuring that Plaintiff is afforded due process;

E. Award to Plaintiff compensatory damages in an amount to be determined at trial and reasonable attorneys' fees and costs pursuant to 42 U.S.C § 1983 and 42 U.S.C §1988; and

F. Order such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

Kennedy, Hernandez & Associates, P.C.

By: */s/ Paul Kennedy*
Paul J. Kennedy
201 12th Street, N.W.
Albuquerque, NM 87102-1815
(505) 842-8662
(505) 842-0653 Facsimile
pkennedy@kennedyhernandez.com

&

Justine Fox-Young, P.C.

By: */s/ Justine Fox-Young*
Justine Fox-Young
201 12th Street, N.W.
Albuquerque, NM 87102-1815
(505) 796-8268
(505) 213-0766 Facsimile
justine@foxyounglaw.com