## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSEPH CALDWELL,

        **Plaintiff,**

vs.                                  1:20-cv-00003-JB-JFR

UNIVERSITY OF NEW MEXICO BOARD OF REGENTS,
NASHA TORREZ,
EDDIE NUÑEZ, and
ACC OP (UNM SOUTH) LLC,

        **Defendants.**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NASHA TORREZ'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 43)[1]

      Plaintiff Joseph Caldwell, through his counsel of record, Paul J. Kennedy and Justine Fox-Young, hereby responds in opposition to Defendant Nasha Torrez's Motion for Judgment on the Pleadings (Doc. 43) as follows:

1. On January 13, 2020, Plaintiff filed his First Amended Complaint which properly states a claim for violations of his right to due process as against Defendant Torrez and others. *See* Doc. 10.

2. On April 29, 2020, Defendant Torrez filed her Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), *see* Doc. 43.

3. The parties have agreed that this response brief is timely filed despite its filing more than 14 days after the filing of Torrez's motion.

4. Defendant Torrez is not entitled to qualified immunity on Plaintiff's procedural due

---

[1] Mr. Caldwell anticipates that Defendant Torrez will impose sanctions against him based on the results of UNM's ongoing investigation within the next 30 days. He therefore requests an opportunity to file a supplemental response addressing Torrez's broader liability for procedural due process violations related to the sanctioning process within 14 days after sanctions are imposed.

process claim, which is properly pled.

5. Furthermore, at this stage, Defendant Torrez cannot show that no facts are in material dispute, meaning that this motion cannot be resolved on the pleadings alone.

6. For these reasons, Plaintiff respectfully requests that the Court deny Defendant's motion outright or defer ruling until adequate discovery has been completed.

## INTRODUCTION

Defendant Torrez moves to dismiss Plaintiff's due process claim against her, also asserting that she is entitled to qualified immunity on that claim. In support, she argues as follows:

- That "Plaintiff was not actually suspended from UNM" because he was permitted to take online classes;

- That UNM's actions were based on an emergency decision to protect the health and safety of the student body, although she subsequently reversed herself and determined he did not constitute a threat or disruption,

- That Mr. Caldwell had a right to appeal her decision; and

- That she had no choice but to suspend Caldwell given pressure from the Department of Justice ("DOJ") and the public, and the threat of lawsuits from aggrieved alleged victims.

Each of these arguments fails, as Mr. Caldwell has clearly stated a claim that Defendant Torrez violated his clearly established right to procedural due process as described below.

## FACTUAL BACKGROUND

Plaintiff Joseph Caldwell incorporates the factual allegations contained in his amended complaint (Doc. 10) and notes the following salient facts. Mr. Caldwell began attending the University of New Mexico ("UNM" or "the University") in January, 2019. He later signed to

play as a point guard for the University's basketball program in April, 2019. In December, 2019, a woman, who is not a UNM student and does not live on UNM's campus accused Mr. Caldwell of battery. Mr. Caldwell was not charged or arrested in December; however, Defendant Torrez and others at UNM still moved swiftly to suspend Mr. Caldwell, altogether banning him from campus, from team practices and games, and from his residence at Lobo Village.

Upon receiving information that an individual had alleged that Mr. Caldwell assaulted her, Defendant Torrez immediately suspended Caldwell without informing him of the allegations against him or giving him any opportunity to defend himself against the claims. Banning Mr. Caldwell from campus was entirely unreasonable given that his presence there did not pose any threat to the alleged victim who had no ties to UNM, and given that this was not a case in which multiple allegations had been made by different individuals. There was simply no legitimate reason to prevent Mr. Caldwell from continuing to live in his apartment, attend classes and use other UNM facilities while the Office of Equal Opportunity proceeded with an investigation. Defendant Torrez ultimately agreed that Caldwell posed no threat to the campus community and lifted the suspension, but only did so after Mr. Caldwell obtained counsel and filed this lawsuit. *See* Exhibit 1 (January 17, 2020 Letter from Defendant Torrez).

As detailed in the complaint and further documented in Defendant's exhibits, on December 19, 2019, Mr. Caldwell received an email from Defendant Torrez's office stating that he was indefinitely banned from campus. Doc. 43-3. The email did not provide any details regarding the specific nature of the allegations, instead stating only that he was alleged to have been involved in a "violent assault involving civil rights," and also informed him that he would be unable to reach anyone at the office until after January 1, 2020 as staff would be on vacation. *Id.* The ban further provided that Mr. Caldwell was banned from attending in person classes and also banned from Johnson Gym and all practice facilities. *Id.* Defendant Torrez's office

threatened Mr. Caldwell with criminal charges for trespass for failure to comply with these provisions and/or Code of Conduct charges that could guarantee his expulsion. *Id.*  In a public release, UNM officials reported that Mr. Caldwell would not participate in any basketball team activities until further notice. *See* Doc. 10. As a direct result of the suspension and of related statements by UNM officials, Mr. Caldwell sustained serious and irreversible damage to his reputation among his peers and the broader collegiate community.

Mr. Caldwell has denied and continues to assert his innocence to the charges at every opportunity, has repeatedly requested the evidence against him, the opportunity to interview witnesses and a full due process hearing with a neutral arbitrator. Each time, these requests have been denied. Shortly after receiving notice of the interim suspension, Mr. Caldwell also requested a meeting with Defendant Torrez at which time she informed him that she would decide whether or not to continue his indefinite suspension sometime after the holiday break. Over the course of the break, Mr. Caldwell was forced to move out of his apartment and was not permitted to practice with the basketball team or to eat the twice daily meals that accompany practice. Finally, on January 10th, the undersigned counsel met with Defendant Torrez and counsel for the University. Defendant Torrez refused to provide a basis for the interim ban but claimed that one of her employees had instituted the ban and that she was entirely uninvolved in that process. Defendant Torrez made these claims despite the fact that the UNM Student Grievance Procedure explicitly provides that the Dean of Students is the individual with the authority to impose or lift an interim ban or suspension. Section 4.3(A) of the Student Grievance Procedure provides as follows:

> The Dean of Students may immediately suspend a student (or chartered student organization) and/or ban a student or visitor *if the Dean concludes that the person's continued presence on the campus may endanger persons or property or may threaten disruption of the academic process or other campus functions*.

See 4.3(A) of the Student Grievance Procedure (emphasis added) viewable at https://pathfinder.unm.edu/student-grievance-procedure.html[2]

On January 17, 2020, Defendant Torrez informed Mr. Caldwell that she was lifting the campus ban because there was in fact no basis for a finding that Mr. Caldwell was a danger to individuals on campus or that he threatened to disrupt the academic process or other campus functions. It is entirely unclear, because Defendant Torrez did not specify, what factual allegations she had relied on in suspending Mr. Caldwell that she no longer found credible or reliable. Mr. Caldwell remains suspended from the basketball team.

Under UNM's policies, Mr. Caldwell will never have a live hearing with an opportunity to present evidence in his defense and to test evidence against him. *See* Doc. 10. As this Court has previously observed, UNM students are subject to a less formal procedure when claims of sexual misconduct or domestic partner violence are at issue. *See Lee v. University of New Mexico*, 2020 WL 1515381, at *2 (March 30, 2020) (Browning, J.). The University's Office of Equal Opportunity ("OEO") conducts a process which involves interviewing the complaining student, reviewing the information and seeking further witness interviews. The accused student is never provided discovery, witness interviews or even recorded or transcribed witness statements and

---

[2] This provision is taken directly from the language of *Goss v. Lopez*, 419 U.S. 565 (1975), which provides for a single exception to the due process requirement of notice and a pre-deprivation hearing as follows:

> . . . there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school.

419 U.S. at 582.

is never afforded an opportunity to test the credibility and weight of the evidence that OEO receives.

Mr. Caldwell's case comes on the heels of an investigation by the University by the Department of Justice which resulted from numerous complaints about UNM's Title IX process. DOJ issued a letter of findings against UNM in 2016, detailing improper policies and procedures, inadequate training, and failures to promptly and equitably resolve Title IX complaints. This investigation adversely affected UNM's standing in the community, and the UNM administration, including Defendant Torrez, has taken unwarranted action against Mr. Caldwell in an effort to improve the school's image in the wake of this scandal.

In the course of its prior investigation of UNM's handling of reports of sexual harassment and sexual assault, DOJ documented UNM's lack of an adequate policy for issuing and enforcing interim suspensions and no contact orders. *See* Doc 43-1 at 3. Among other things, DOJ criticized UNM's failure to set forth the factors to be considered in imposing an interim suspension, precisely because it is reckless and damaging to impose such measures indiscriminately and without proper process as Defendant Torrez did in this case. *See* Doc. 43-1 (referencing the need for the Dean of Students to take steps to determine whether a respondent poses an ongoing threat on campus). The DOJ memo goes on to demonstrate some ways in which UNM's practices fell short of due process requirements, without explicitly referencing the legal standard:

> [UNM] does not set out the factors it considers in lifting [an emergency] ban . . . . The result can be confusion and frustration for the complainant as well as the respondent. *In one example, a respondent was suspended from campus for the pendency of the investigation, but requested an informal hearing on the suspension. One month later, the DOS lifted the interim suspension, but failed to inform the complainant or explain the reason* . . . . In another matter, UNM suspended the respondent from campus during the pendency of the investigation but told him that he could continue with his course work at home . . . no arrangement was made for him to take his tests off campus . . . . As a result, he dropped all his classes and lost a semester of course work.

Doc. 43-1 at 3 (emphasis added). Subsequent to this letter, UNM and DOJ entered into an agreement whereby UNM agreed to "ensure that its procedures provide for adequate, reliable, prompt, and impartial investigation, adjudication (where appropriate), and appeal (where applicable) . . . including an equal opportunity for the parties to present witnesses and other evidence." *See* Doc. 43-2.

Although four years have passed since the time of the DOJ memo, UNM's practices continue to effect denials of due process. DOJ's description of an interim suspension, which was reversed without explanation only when the accused student requested a hearing, could very well have described Caldwell's case but for the fact that it occurred prior to April, 2016.

## ARGUMENT

### I.     The Pleading Standard

Normally a motion to dismiss for failure to state a claim upon which relief can be granted should be made prior to filing the answer or in the answer itself. Fed.R.Civ.P. 12(b)(6). If the defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings. Fed.R.Civ.P. 12(c), (h)(2); *Lowe v. Town of Fairland, Okla.,* 143 F.3d 1378, 1381 n. 5 (10th Cir.1998). "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties. "A judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.") *See Mata v. Anderson*, 760 F.Supp.2d 1068, 1082 (D.N.M. 2009)(Browning, J.) (internal citation and quotation omitted).

The Tenth Circuit Court of Appeals applies "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007). A "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, "[A] complaint . . . must provide . . . factual allegations that when assumed to be true raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id. at 1974.* The "plausibility" threshold discussed in *Twombly* does not supersede rule 8(a)(2). *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 556).

The Court must interpret the allegations in the complaint in the light most favorable to the plaintiff, *Landmark Land Co. v. Buchanan*, 874 F.2d 717 (10th Cir. Okla. 1989), and must accept all well-pleaded allegations of the complaint as true, *McDonald v. Kinder-Morgan, Inc.,* 287 F.3d 992, 997 (10th Cir. 2002). The Court may also draw all reasonable inferences from the alleged facts in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss.") The Plaintiff's complaint need only "give the defendant a fair notice of what the . . .claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Alston*

*v. North Carolina A & T State Univ.,* 304 F.Supp.2d 774, 778 (M.D.N.C. 2004).  Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should only be granted in limited circumstances. *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir.1991); *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *modified on other grounds*, 468 U.S. 183 (1984).

## II.   Mr. Caldwell Has Adequately Stated A Claim Against Defendant Torrez for Violations of His Right to Procedural Due Process

### a.   The Contours of the Right to Procedural Due Process

The Fourteenth Amendment's Due Process Clause states, "No state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. A court must "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. V. Thompson*, 490 U.S. 454, 460 (1989) (internal citation omitted); *see also Zwygart v. Bd. Of Cnty. Comm'rs,* 483 F.3d 1086, 1093 (10th Cir. 2007).

At its core, due process requires fair notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Beyond those threshold requirements, though, due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The procedural protections required in a particular situation hinge on:

• The interests of the individual in retaining their property and the injury threatened by the official action;

• The risk of error through the procedures used and probable value, if any, of additional or substitute procedural safeguards; and

• The costs and administrative burden of the additional process, and the interests of the government in efficient adjudication.

*Mathews,* 424 U.S. at 335. The Court need only evaluate whether Mr. Caldwell has a plausible claim that these three factors will weigh in his favor. *See, e.g.*, *Doe v. Alger*, 175 F. Supp. 3d 646, 656 (W.D. Va. 2016)(evaluating "whether the plaintiff has sufficiently alleged that the process he received was constitutionally inadequate").

Mr. Caldwell is entitled to heightened procedural due process protections because he faces dismissal or other sanctions for disciplinary, rather than academic, reasons. *See Brown v. Univ. of Kansas*, 599 App'x 833, 837 (10th Cir. 2015). Notably, a recent case from the District of Colorado raises the question of whether a plaintiff who, like Caldwell, is "accused of conduct which may form the basis for criminal prosecution" is entitled to "more than minimal notice and an opportunity to respond." *Doe v. DiStefano*, 2018 WL 2096347 (D. Colo.) (Martinez, W.)(citing *D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 162 (2d Cir. 2002); 1 Wayne R. LaFave *et al.*, Criminal Procedure § 2.7(a) (4th ed., Dec. 2017 update).

**b.    Mr. Caldwell Properly Alleges Both Property and Liberty Interests in His Uninterrupted Education**

Mr. Caldwell alleges a property interest in his continued education and a liberty interest in his reputation insofar as it may affect his future education and employment opportunities. *See Goss v. Lopez*, 419 U.S. 565, 575 (1975) (noting that allegations "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment."). Once provided, public education becomes "a property interest which may be protected by the Due Process Clause." *Id.* at 574. The Tenth Circuit extended and expanded this right in *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975)

(holding that an individual's place in a post-secondary nursing program constitutes a protected property interest), where the court found that "in light of *Goss* . . . where the Supreme Court recognized a property right in public school students, that certainly such a right must be recognized to have vested [where a student] paid a specific, separate fee for enrollment and attendance at [a technical] school." Tenth Circuit decisions since then have expanded the interest to encompass a more generalized interest in secondary and post-secondary education, with a concomitant procedural due process right. *See, e.g., Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986); *Gossett v. Oklahoma ex rel. Bd. Of Regents for Langston University*, 245 F.3d 1172 (10th Cir. 2001); *Lee v. Kan. State Univ.*, 2013 WL 2476702, at *6 (D Kan. June 7, 2013).

### c.   Mr. Caldwell's Complaint Adequately Pleads a Procedural Due Process Claim Against Defendant Torrez

"The fundamental requisites of due process consist of notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Turney v. FDIC*, 18 F.3d 865, 868 (10th Cir. 1994). A public university must provide the accused notice of the violation and an opportunity to be heard in the context of disciplinary proceedings. *Goss*, 419 U.S. at 579.

The Supreme Court addressed due process afforded students in disciplinary proceedings in *Goss*, where students suspended from Ohio public schools without hearings claimed due process violations. *See* 419 U.S. at 567. The Supreme Court agreed, concluding that "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. The Supreme Court noted that "as a general rule, notice and hearing should *precede* removal of the student from school." *Id.* at 582 (emphasis added).

The Tenth Circuit later addressed the procedural due process to which students are entitled in *Watson ex rel. Watson v. Beckel*, a case which is distinguishable from the present case in a couple of important respects. In *Watson*, the New Mexico Military Institute expelled a student after an investigation showing that the student had assaulted his roommate, in part because the roommate was Hispanic. *See* 242 F.3d at 1238-39. The Tenth Circuit noted the guidance in *Goss v. Lopez*, held that the *Mathews v. Eldridge* balancing test "is appropriate for determining when additional procedure is due," and ultimately concluded that the school had no obligation to provide the accused student with written notice because he had already received oral and constructive notice. 242 F.3d at 1241. The court held that he did not have standing to request legal counsel, the presentation of evidence, the right to cross-examine witnesses, an impartial board, a transcript of the hearing, and independent review of the decision . . . . because he has not demonstrated that he will be subject to future disciplinary procedures." 242 F.3d at 1242-3.

Mr. Caldwell, in contrast, did not receive constructive notice prior to his suspension and will almost certainly be subject to future discipline. The suspension therefore "fell short [even] of what even a high school must provide to a student facing a days-long suspension." *Doe v. Purdue University*, 928 F.3d 652, 663 (7th Cir. 2019).

Mr. Caldwell alleges flaws in both the notice he received and in the procedures surrounding his opportunity to be heard with regard to both his interim suspension and the full investigation and sanctioning (which is yet to be completed) by the University. With regard to Defendant Torrez, the complaint focuses on Mr. Caldwell's interim suspension from campus; however, Caldwell also states a claim that he has been and continues to be denied due process in the course of the University's Title IX investigation and sanctioning process. He does not waive any argument that Defendant Torrez is also liable for the University's future sanctions and/or

discipline which she will decide if Mr. Caldwell's appeals are denied and for any and all other due process deprivations beyond those associated with the interim suspension.[3]

As detailed in the complaint, on December 19th, 2019, without explaining the charges against him, Defendant Torrez and others suspended Plaintiff from UNM and physically banned him from campus and from his residence at the Lobo Village development. *See* Doc. 10 at 4. The message came first from Defendant Torrez' office by email along with an admonishment not to try to contact Defendant Torrez or anyone from the administration over the winter break.

Mr. Caldwell alleges multiple procedural due process violations in connection with his interim suspension and with the ongoing disciplinary process and concomitant sanctions at by the University. These violations may be grouped into three discrete challenges: (1) insufficient notice and no explanation of the evidence against him; (2) lack of a thorough and impartial investigation; and (3) denial of meaningful right to discovery, presentation of evidence and the opportunity to confront or cross-examine witnesses against him at a hearing before an impartial tribunal.

    *1.  Insufficient Notice and Total Lack of Investigation*

The only notice of alleged wrongdoing Mr. Caldwell received was sent to him contemporaneously with the notice of his suspension and was contained in the December 19, 2019 email from Defendant Torrez's office. The sum total of the explanation for the ban read as follows: "I am in possession of information alleging that you were involved in a violent assault relating to civil rights that is under the jurisdiction of the Office of Equal Opportunity." Doc. 43-

---

[3] Mr. Caldwell also intends to name UNM President Garnett Stokes as a Defendant should the Court permit him to amend his complaint and will include a claim against her for ongoing Due Process violations related to the investigation conducted by the UNM Office of Equal Opportunity. Because the University had not made findings against Mr. Caldwell as of the timing of the filing of the operative complaint, these particular allegations were not included at that time.

3. Defendant Torrez provided none of the details of the alleged victim's complaint and withheld information as to the date or location of the alleged incident, the identity of the alleged victim, the nature of the alleged assault and all other pertinent details.

As the Doe court noted, "the Supreme Court's classic statements about due process emphasize the need for 'notice and opportunity for hearing *appropriate to the nature of the case*,'" *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (emphasis added), and that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and *in a meaningful manner*," Mathews, 424 U.S. at 333. (internal quotation marks omitted; emphasis added). The notice requirement was even more robust "given the fact that the conduct of which [Caldwell] was accused in his University proceeding could also give rise to possible criminal culpability." *DiStefano*, 2018 WL 2096347, at *8 (concluding that the plaintiff pled a procedural due process violation where he claimed that University officials had denied him his right to a live hearing, to confront and cross-examine witnesses and to call witnesses in his defense before a fair and impartial tribunal). In Caldwell's case, Defendant Torrez was required, at a minimum, to advise him of the information she had indicating that he had engaged in violent behavior and give him an opportunity to respond at some kind of hearing prior to any suspension. Instead, Torrez acted to suspend Caldwell without so much as a phone call in advance, later informing him of the suspension by email before shutting down the office for winter break. The University then happily used the resources to alert the media and the public of the suspension only three days later.[4] Weeks later, when Defendant Torrez opted to lift the ban based on the lack of evidence that Mr. Caldwell posed a threat, it became abundantly clear that the University had done no investigation whatsoever prior to suspending him.

---

[4]   https://www.espn.com/mens-college-basketball/story/_/id/28353030/new-mexico-suspends-carlton-bragg-jj-caldwell-indefinitely

2. *Torrez Denied Caldwell Discovery and a Hearing Before an Impartial Tribunal*

Mr. Caldwell further asserts that he received no evidence or even a summary of evidence from Defendant Torrez and no hearing prior to his suspension. Defendant Torrez did not constitute a "tribunal" nor was she neutral and unbiased. As alleged in Caldwell's complaint and elucidated in Torrez's motion, Torrez was extremely biased against Mr. Caldwell simply because he was accused of domestic partner violence, due to her eagerness to avoid being sued and to limit the sort of criticism from DOJ she had weathered in the past. *See* Section (II)(c)(4), *infra*. "A fundamental principle of procedural due process is a hearing before an impartial tribunal," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998), and "[a] tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing," *Id.* Mr. Caldwell has therefore properly alleged that Defendant Torrez was incapable of being impartial as a result of the politically charged nature of the allegations.

3. *Torrez Denied Mr. Caldwell Due Process*

The *Mathews v. Eldridge* analysis strongly favors a finding that Defendant Torrez failed to afford Mr. Caldwell adequate process. As in *Lee v. UNM*, Mr. Caldwell's interests in completing his college education are very high, as are his interests in continuing to maintain a positive reputation and to compete as an NCAA Division I athlete. Whether or not he is further sanctioned as a result of the University's investigation into this matter, he is unlikely to be accepted by another University and another basketball program as a result of the severe damage to his reputation surrounding the interim suspension and Defendants' related public pronouncements. Mr. Caldwell, who is not from New Mexico and has no family or community support outside his peers at UNM, also had a strong interest in remaining in his home at Lobo Village. *See Mathews*, 424 U.S. at 335.

Defendant Torrez and the University had no definable interest in limiting the very basic procedural safeguards to which Mr. Caldwell is constitutionally entitled. Given that Mr. Caldwell had not been arrested or charged at the time of the suspension (and still has not) and given that the alleged victim has no ties whatsoever to the University community, there was no exigency whatsoever requiring Mr. Caldwell's immediate removal from campus, particularly given the fact that winter break was to begin only two days later.

As is evident from the fact that Defendant Torrez reversed her position and lifted the campus ban approximately a month after imposing it, the risk of error in failing to provide Mr. Caldwell with particularized notice of the allegations against him and in failing to conduct any investigation or to afford Mr. Caldwell a hearing were significant. *See Mathews*, 424 U.S. at 335. In lifting the ban and acknowledging that Caldwell does not pose a threat, Torrez all but admits that she made the wrong decision in December. Had she afforded Caldwell proper process then, the infringement on his property and liberty interests could easily have been avoided, and the resources required to provide Mr. Caldwell with this basic notice, the evidence against him and an opportunity to defend himself would have been negligible. *Id.* Furthermore, the University has "little interest in not providing other basic procedural safeguards . . . such as allowing [Caldwell] to present his defense, giving [him] notes, recordings . . . the identity of witnesses against him," summaries or other particularized information regarding the evidence and witness statements Torrez relied on as the basis for the suspension. *See Lee*, 2020 WL 1515381, at *34. (applying the *Mathews* test and concluding that Mr. Lee had adequately stated a claim that UNM's hearing procedures do not comply with Due Process.).

    4.  *Torrez's Arguments In Defense of the Suspension Fail to Establish Her Entitlement to Judgment as a Matter of Law*

Defendant Torrez makes several arguments as to why the interim ban did not offend Mr. Caldwell's due process rights. Each of these efforts fails. First, Defendant Torrez argues that "Plaintiff was not actually suspended from UNM" because he was permitted to take online classes. Given Mr. Caldwell's established property right in his education and liberty right in his reputation and future prospects, Defendant Torrez was not permitted to limit the classes he attended or the means by which he attended them.

Torrez goes on to cite *Carrion v. Yeshiva Univ*, 535 F.2d 722 (2nd Cir. 1976) for the proposition that an administrator may take temporary action (in this case placing an employee on a short administrative leave) without a hearing even if due process requires a hearing before final action is taken. In *Carrion*, the Second Circuit Court of Appeals based its decision on the fact that the threat of the unions striking in the absence of action against the employee constituted an emergency and that the employee's refusal to accept the suspension thwarted the process in which she likely would have had some sort of hearing. *Carrion*, 535 F.2d at 730. The case is simply not analogous to Mr. Caldwell's case and is outside the body of case law formed by *Goss* and its progeny. Mr. Caldwell's liberty and property interests in his education and his reputation are of an entirely different nature than those of the plaintiff in Carrion, a hospital employee. Torrez cites *Goss* for the proposition that students who pose a danger or threat of disrupting the academic process may be immediately removed from school, *see* motion at 10, but makes no mention of the follow-on requirement that, "[i]n such cases, the necessary notice and rudimentary hearing should follow as soon as practicable." *Goss*, 419 U.S. 565, 582-3. Mr. Caldwell has never received a hearing. After winter break concluded, Mr. Caldwell alleges that Defendant Torrez did finally hold a brief meeting with Mr. Caldwell and counsel at which time she again refused to provide any information whatsoever as to the basis for the ban. *See* Doc 10 at 7.

Torrez further argues that UNM's actions were based on an emergency decision to protect the health and safety of the student body, stating that because the "situation constituted an immediate threat to the safety of other students and a disruption of the academic process, no pre-suspension hearing was necessary." Motion at 2. Caldwell alleges that, other than declaring and repeating that Mr. Caldwell's presence on campus posed an emergency, Defendant Torrez offered no facts, either at the time of the suspension (she has never provided any basis for the suspension and affirmatively refused to do so at the January 10, 2020 meeting with Mr. Caldwell), that even arguably demonstrate that Mr. Caldwell presented a threat or disturbance of any kind to the UNM community. That this "emergency" demanded his immediate suspension is belied by the fact that Mr. Caldwell was never arrested, that the alleged victim had no ties to UNM and did not live on or near campus, and that Defendant Torrez's January 17, 2020 letter lifting the suspension explicitly stated that Mr. Caldwell posed absolutely no danger to anyone on campus nor did he threaten the academic process. *See* Exhibit 1 (January 17, 2020 Letter from Defendant Torrez).

Over three pages, the motion details the history of the Department of Justice inquiry and investigation at UNM, arguing that Torrez's actions were somehow lawful by virtue of the fact that DOJ had previously criticized the Dean of Students for failing to be "aggressive enough" in going after accused students and later encouraged the University to issue interim suspensions to accused students. *See* Motion at 4-5. This argument only further bolsters Mr. Caldwell's claim that the University has in fact taken a harder line against accused students due to public pressure as a result of the DOJ oversight and investigation without regard to the due process rights of the accused. *See* Doc. 10 at 9. Torrez's argument that the University and DOJ both agree that interim suspensions are a "vital tool" for fostering a climate in which people are comfortable making harassment claims, motion at 10-11, is irrelevant to any analysis of the scope of Mr. Caldwell's

individual due process right. That Defendant Torrez continually raises the specter of the DOJ investigation and the campus politics surrounding sexual harassment and assault merely underscores the fact that the decision to suspend Mr. Caldwell was a political one.

Torrez also mentions that Plaintiff "was given the right to appeal," as if that would remedy the defective process surrounding the suspension. Because Torrez denied Mr. Caldwell proper notice of the allegations, made no findings and could point to no basis for the suspension, this so-called appeal right is entirely illusory.

*Goss* clearly requires that a student's opportunity to share his version of events in his defense must occur at "some kind of hearing." 419 U.S. 565, 579 (1975). Caldwell has had nothing of the sort. UNM argues that he was given the opportunity for a superficial meeting with defendant Torrez, a meeting at which he was not privy to the detailed allegations against him, witnesses to those allegations and certainly not afforded an opportunity to test that evidence by cross-examination. Defendant Torrez denied Mr. Caldwell the "fundamental requirement of due process . . . the opportunity to be heard at a meaningful time," in this case prior to the interim suspension, and to be heard in a "meaningful manner," with the opportunity to present and test evidence against him. *Mathews*, 424 U.S. at 333. Mr. Caldwell has received no opportunity to present and test evidence, no access to witnesses and no live hearing of any kind and yet Defendant Torrez is now poised to impose sanctions against him. All of these failures have denied Mr. Caldwell a "'meaningful opportunity to present'" his case. *Watson*, 242 F.3d at 1241 (quoting *Mathews*, 424 U.S. at 349).

### III.   Defendant Torrez Is Not Entitled to Qualified Immunity

As established above, Defendant Torrez denied Mr. Caldwell procedural due process, in depriving him of notice, a proper investigation, discovery and hearing before a neutral tribunal, meaning that the qualified immunity analysis rests on a determination of whether clearly

established law put Torrez on fair notice that her specific conduct was unconstitutional. *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). This analysis is not forestalled by the lack of a case with precisely the same facts, and qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Torrez goes to some length to argue that she is entitled to qualified immunity because she felt she had no choice but to suspend Caldwell in order to avoid being sued, explaining that she was only adhering to the requirements of Title IX and the DOJ agreement, and that risk management practices essentially dictated that she had no choice but to ban Mr. Caldwell from campus because:

> [i]f [UNM] did not impose interim bans, it could have exposed itself to liability for allowing a culture of intimidation against individuals who complained of harassment, in violation of Title IX and UNM's agreement with the Justice Department. However, by imposing interim bans, UNM and its officials expose themselves to lawsuits of the type currently at bar. "It is precisely this type of damned if you do, damned if you don't, discretionary decision-making on the part of government officials that the doctrine of qualified immunity was meant to protect."

Motion at 15 (citing *Callahan v. Lancaster-Lebanon Intermediate Unit 13*, 880 F. Supp. 319, 339 (E.D. Penn. 1994)). Torrez essentially concedes that her decision to suspend Caldwell without proper procedural due process was a calculated defensive judgment intended to reduce her own civil liability.

But Torrez cannot shield herself from liability under the constitution by purporting to uphold the precepts of Title IX or to carry out the mandates of the DOJ agreement. Furthermore, no provision in Title IX permits administrators to immediately suspend accused students pending a campus investigation, and nothing in the DOJ agreement requires blanket suspensions. To the contrary, these determinations are to be fact-based and individualized, and Caldwell's suspension

was neither. On Torrez's logic, schools could act with total impunity in banning every accused student from campus indefinitely, with no factual support, no clear notice, no pre or post-ban hearing, until final disciplinary action is taken. Much to the contrary, where UNM officials admit to aggressively prosecuting males over females, those actions should give rise to liability for discrimination on the basis of sex under Title IX. Although Mr. Caldwell has not sought relief pursuant to Title IX, Defendant Torrez's concession would certainly bolster such a claim, as it gives rise to a strong inference that UNM is biased against Caldwell and other men because of their sex. *See Lee*, 2020 WL 1515381 at *47-48 (concluding that the plaintiff had adequately stated a Title IX claim where he alleged bias where "the Defendants were criticized for not responding to female complaints against male students and felt pressure from both the Department of Justice investigation and the Department of Education's "Dear Colleague" letter to "crackdown on" sexual misconduct allegations against male students").

Critical to the qualified immunity analysis, the unlawfulness of Mr. Caldwell's interim suspension was and remains immediately apparent, as every reasonable official would have realized that it was contrary to due process to suspend Mr. Caldwell without any explanation as to the charges and without giving him an opportunity to marshal evidence in his defense. This has been true since the Supreme Court decided *Goss* in 1975. Specifically, Mr. Caldwell's right to notice and to view the school's evidence against him, even for a suspension of fewer than 10 days, is clearly established as is his right to a neutral tribunal. The Sixth Circuit Court of Appeals found clearly established law at this level of granularity in *Goss* in a recent case, *Doe v. Miami University*, 882 F.3d 579 (6th Cir. 2018), brought by a male student under Title IX and §1983 for due process and equal protection violations as follows:

> John's procedural-due-process right to an impartial adjudicator and access to the evidence used against him was also clearly established. First, viewing the allegations in the light most favorable to John, we conclude that a reasonable

> person in Vaughn's position should have known that she was partial and that she could not, therefore, sit on John's Administrative Hearing Panel. The impropriety of Vaughn's alleged conduct in failing to disqualify herself should have been apparent based on *Goss* . . . . and other precedent directly on point . . . . Second, John's right to view all of the evidence against him is clearly established . . .(citing *Goss* . . . . Thus, we reverse the district court's holding that Vaughn is entitled to qualified immunity from John's equal-protection and procedural-due-process claims.

882 F.3d at 604. Without question, in student disciplinary actions, due process requires that the student be given oral or written notice of the charges against him and, if he denies them as Caldwell did, an explanation of the evidence the authorities have and an opportunity to present his side of the story. *See Goss*, 419 U.S. at 581. "[A]s a general rule notice and hearing should precede removal of the student from school." *Id.* at 582. The only exception to these requirements exists in the case of "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process" who "may be immediately removed from school." *Id.* Of course, taking Mr. Caldwell's allegations (and Defendant Torrez's statements) as true, there is no basis for an argument that Caldwell posed any threat to any member of the UNM community. *See* Doc. 10; Exhibit 1.

Caldwell alleges that at no time prior to December 19, 2019 did Defendant Torrez actually assess whether Caldwell was a threat to the campus community. Instead, by her own admission, she did not consider the individualized particularized facts in her decision to suspend Caldwell. That's because she wasn't interested in giving Mr. Caldwell due process but only in avoiding liability. Of course, when she was named as a Defendant in this matter, she reversed course and lifted the suspension. By that time, however, Mr. Caldwell had already suffered significant damage, including irreversible reputational harm.

**IV.      The Court Should Grant Plaintiff Leave to Amend His Complaint Rather Than Dismissing the Due Process Claim Against Defendant Torrez**

To the extent that the Court finds Plaintiff's due process claim against Defendant Torrez deficient, the proper remedy is amendment and not dismissal. Under Federal Rule of Civil Procedure 15(a)(2), the Court should freely give leave to amend "when justice so requires." A motion to amend should be granted absent "undue delay, bad faith or dilatory motive on the part of the movant ... [or] undue prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

WHEREFORE, as set forth above and in his complaint, Plaintiff has established a claim for relief timely and properly under the due process clause of the United States Constitution for which the law is clearly established and therefore respectfully requests that the Court deny Defendant Torrez's motion for judgment on the pleadings.

Respectfully submitted,

Kennedy, Hernandez & Associates, P.C.

By: */s/ Paul Kennedy*
Paul J. Kennedy
201 12th Street, N.W.
Albuquerque, NM 87102-1815
(505) 842-8662
(505) 842-0653 Facsimile
pkennedy@kennedyhernandez.com

&

Justine Fox-Young, P.C.

By: */s/ Justine Fox-Young*
Justine Fox-Young
201 12th Street, N.W.
Albuquerque, NM 87102-1815
(505) 796-8268
(505) 213-0766 Facsimile
justine@foxyounglaw.com

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on the 15th day of June, 2020, I filed the foregoing pleading via CM-ECF, causing all registered parties to be served.

<u>/s/ *Justine Fox-Young*</u>
Justine Fox-Young